Michael Merritt for Plaintiff Appellants. My client, Patty Davis, is in the courtroom with us today. Your Honors, the District Court erred in deciding as a matter of law that Opportunity Education and Hugo Enterprises are not an integrated enterprise for purposes of Title VII. Opportunity Education and Hugo Enterprises, in fact, are an integrated enterprise, and that's by design. The purpose is to save money and to run a more efficient organization. I'd like to talk about each of the four Baker factors, and as I do that, it's important to keep in mind that no one factor is controlling. All the factors have to be considered in their totality. With respect to common ownership or financial control, Mr. Ricketts is the sole owner of Hugo Enterprises, and through Hugo, he manages, owns, and operates his various other enterprises, including Opportunity Education. Mr. Ricketts is also the sole source of funding for Opportunity Education, and he funds it by contributing $5 million a year to it, and he does that monthly through Hugo. He doesn't do that directly. With respect to the common management factor, Joe Ricketts is the CEO of both organizations. He's also the treasurer of Opportunity Education, sole member of Hugo LLC, and the sole voting director of Opportunity Education. How do you, you know, I think we're familiar with the facts, but there's some argument here, and I think Judge Smithcamp raises it, is you've got somebody that's got a business and wants to have a foundation to do philanthropic matters, and so that it saves money for the philanthropic matters, he uses his business people and assets and building and so forth to use it, so is it, and you want to lump them all together. Why is it maybe bad public policy to do that, or we should make some sort of exception or whatever, because this is, you know, I think that's what they're arguing, essentially, that, well, look, this is a foundation doing philanthropic, and we're just, you know, we need to save money. Well, I think there are two points in response to that, Judge, and one is, if an employer wants to take advantage of acting like a larger employer to save money, I think they ought to be expected to comply with the anti-discrimination laws. You know, they didn't have to choose to comply, but they chose to do it to save money. They ought to be willing to pay for that in terms of compliance. The other issue is, you know, this isn't a mom-and-pop shop here. We're talking about an organization with more financial power than a lot of large corporations, so it's not a case, as a matter of public policy, where small charities are going to be affected. Each case has to be looked at individually. Back to the common management prong, I think it's important to note that Alfred Leavitt was President and General Counsel of Hugo. He also had a personal employment agreement with Mr. Ricketts, whereby he expressly agreed to give business and legal advice to Mr. Ricketts across all of his organizations, not just Hugo. And Mark Simmons also had a personal employment contract, where he agreed to be Chief of Staff across all the organizations, not just Hugo. And they provided services to Opportunity Education, to Hugo, to the other for-profit entities, and to the political entity as well. With respect to Mr. Ricketts' role as CEO, it's important to note that he wasn't detached. He was hands-on both with Hugo, I think the record supports that he communicated with Mr. Leavitt and Mr. Simmons regularly. Is Mr. Ricketts, Joseph Ricketts, was he counted when they tried to reach for the application of the Act to 15 people? I don't believe he was, Judge. There's no dispute with Hugo combined with Opportunity Education were above 15. And the defendants have admitted that. I didn't hear what you said. Defendants have admitted. No, I'm talking about when you look at the philanthropic group, I'm forgetting their name, OEF or whatever. When they counted their number of employees, did they include Joseph Ricketts and these other people who were doing shared work, or did they just include those who were on the payroll? You're talking about the numerosity issue, getting to 15? Right. I don't believe he was counted. I don't believe he was a paid employee. Well, that's why I'm wondering who was counted, who wasn't counted to get to the 15. I know if you integrate them, you've got 50, more than 50. But I'm saying if you separate them, did anybody make the calculation of saying, okay, OEF has eight salaried employees, but it's borrowing at no cost to itself, eight other people from Hugo. In other words, look at it that way and say, okay, well, these people are doing their HR, they're doing their billings, they're running the company like Mr. Ricketts. Has anybody made that calculation? Nobody made that calculation. No one's made that argument, and I haven't seen any cases that do that. The cases basically hold- Are you saying there wasn't a head count as to 15 people associated with OEF in this case? Well, there was a head count. Whose head was counted? I thought that was the question that was asked. Well, they have roughly six or seven employees as a maximum, and we don't dispute that. So the issue is whether or not Hugo should be combined to get above 15. Even if you add these people, do they get to 15? If you combine Hugo and Opportunity Education- Well, the whole organization, but the people from those, you had Mr. Ricketts and Mr. Levitt and three or four others that are mentioned in the briefing, but if you add all the people who were mentioned, you don't get to 15, do you? I think it would be close. It may fall just short. Okay, but that still wouldn't get you over the hump to make Title VII applicable, is that right? Well, if that is the head count, if it's below 15, that would be true, but again, I haven't seen any cases where actual head counts are done of the affiliated entity. Well, I've tried some cases where head counts were done, so I know it's done sometimes, but is this a 501c3 foundation? I believe so. So that the money that's given is tax deductible and so forth. It isn't a subsidiary corporation or sister corporation. It's a separate foundation, is that right? That's correct. And so you're trying to lump this separate foundation with Hugo, which is a corporation, a limited liability corporation, is that correct? And the whole enchilada there, is that right? That's right. That's right. And the cases I've seen in the Eighth Circuit and elsewhere don't count the number of employees of the parent company, for example. It's just the total aggregation of the two employers. And I think that should be done in this case because even if there are fewer employees at Hugo involved in the plaintiff's opportunity education employment, they are able to do that because they receive support from other Hugo employees. So who do you say is the true employer here now? Opportunity education was the direct employer. Hugo is the aggregated employer. It was the true employer in your mind. So you have to look at all of their operation to get to the 15. Is that where you're coming from? That's right. We're not aggregating all the enterprises. Judge Smith-Camp didn't buy that theory, did she? Or did she? She just said under the Baker factors, there weren't enough facts to establish an integrated enterprise to combine the employees of both. And again, we submit that under the facts here, the undisputed facts, there are enough at least to get this case to a jury. In the memorandum in order of the district court on this summary judgment motion, there are, I don't know, about six pages of facts as found by the district court for purposes of the motion. And she recites that the record or that the facts are to be viewed in the light most favorable to the non-moving party. Do you take issue with the facts as found by the district court as set forth in the memorandum in order? Or is your argument what the court made of the facts? Well, it's what the court made of the facts. And I think the facts the court did find are accurate. The court did find there's an interrelation of operations that Hugo provides HR, accounting, tax, legal, things like that. That HR is basically centralized at Hugo. She made those findings. But the court concluded from those findings there was no genuine dispute. Well, I see your point. The district court in its analysis when I read it, she found all these facts, but when she did her analysis of the factors, she didn't discuss many of those facts. Is that what you're saying is, is that the district court, while making the correct findings, then didn't use them or use enough of them? Well, that's one of our contentions. We believe under the facts the district court did find there should be at a minimum a disputed issue of fact, if not a finding of integrated enterprise as a matter of law. I mean, there's common ownership. There's common financial control in relation of operations, centralized HR. And as we discussed in the brief, Hugo, HR, Mr. Levitt, Mr. Simmons were directly involved in the plaintiff's employment. I mean, all those factors militate in favor of the finding of integrated enterprise. And the district court recited a lot of those and without really doing too much analysis concluded otherwise, and we think that was error. And I wanted to go over, we've got a couple of minutes left, with respect to the centralized control of labor relations, again, it's important to note the chronology here and the fact that Hugo personnel were really involved after plaintiffs complained. When the plaintiffs complained to Mr. Barkley, the executive director of opportunity education, he called Mr. Simmons at Hugo. He didn't call Mr. Ricketts at opportunity education. Mr. Simmons then called Mr. Levitt at Hugo. He didn't call Joe Ricketts at opportunity education. From that point forward, Mr. Levitt spearheaded the employer's response to plaintiff's complaints. Hugo really took things over at that point. They were directly involved. Mr. Levitt led the investigation in August, September 2009. When Davis complained to ADP in November 2009, ADP called Simmons at Hugo, not opportunity education. Hugo was the contact. Mr. Levitt called ADP and told them to stop investigating. Mr. Levitt hired Ken Turnbull, his former law partner, to investigate instead. Mr. Levitt was involved in a meeting in New York with Mr. Ricketts to discuss Mr. Turnbull's report before it was finalized. Mr. Levitt and Mr. Turnbull called Ms. Davis and terminated her. During the same call, they announced the results of the investigation. Hugo was involved in all these activities. The reason they were, Hugo was, was because Mr. Levitt and Mr. Simmons report to Mr. Ricketts as CEO of Hugo. Our position on the integrated enterprise issue is that if a company wants to take advantage of employees of an affiliated enterprise and act like a larger employer, they ought to be held responsible and comply with Title VII and the other anti-discrimination laws. Let me just mention briefly with respect to tortious interference. As we noted in the briefs, the Nebraska Court of Appeals has essentially rejected the alter ego defense, which I think is what defendants are raising here. The question is not whether the defendant is a CEO. The question is whether his conduct was unjustified under the circumstances. And I think we've alleged that. We've alleged a misrepresentation, wrongful means, which is actionable under the restatement. Nebraska does follow the restatement for purposes of the tort. And also the secret plan to get rid of Davis, which is covered in the briefs. That's obviously, we believe, tortious interference as well. Is there evidence, to follow along your argument, is there evidence that OEF, in doing its mission, performing its function, represented that they were part of Hugo and used Hugo to aid them in getting, I don't know, customers or whatever? Is there evidence of that? Well, opportunity education did rely on Hugo for a lot of things. I'm talking about in performance, whatever its mission was, did it further their mission with information to the outside world, so to speak, that they were part and parcel of Hugo and thus were well financed and all that sort of thing? We believe that to be the case. Was there evidence presented? Both entities have their names and logos on opportunity education's front office door. Opportunity education received financial support and all the various services we talked about. Opportunity education could focus on the educational mission because Hugo Enterprises did all the so-called back office work, what Mr. Ricketts described as the infrastructure. And he admitted that opportunity education doesn't have its own infrastructure. So they're very integrated, and that's, again, by design to save money. Time's expired. Do you have a question? I just want a short, brief question. You mentioned the logo on the door. I thought I read somewhere that it was revealed or agreed that the logo went up later, the Hugo logo went up later after these events. Is that correct? The photo may have been dated after the events, and if you drive by the office, you may see that the logo's not there anymore. But the point is the plaintiffs will testify that it was there at the material times in 2009-2010. Is that in the record in Judge Smith Camp's, that was before Judge Smith Camp? I don't recall. I know the photo was in the record itself. It may be in one of Davis' affidavits in the record. And I believe Judge Smith Camp didn't specifically reference the photograph in our opinion. Okay. Thank you. Good morning, Mr. Piskorski. Good morning, Your Honors. May it please the Court, Thomas Piskorski on behalf of the defendants at Belize. In answer to a couple of the questions, the record shows that in 2008-2010, the Foundation employed seven or fewer employees, and that's discussed at page six of the red brief. That did not include anybody at Hugo for obvious reasons. Plaintiff's theory has been everybody at Hugo should be counted, not just the individuals that he points to, Mr. Levin and Mr. Simmons. Even with those two, you don't get to 15. They include everyone at Hugo, including people such as the housekeeper, a horseman, a chef, a caretaker. Do you disagree with that approach that they should only count the people at Hugo that were participating? I think that is the right approach. If those people actually touched any Foundation administrative matter, those would be the people that count, not everyone else. Judge Shepard, you asked about the logo. It's discussed at page 29 of the red brief. The logo did not appear on the door. The Hugo name did not appear alongside the Foundation name until 2011. There is no record evidence of the logo appearing before then. If I can go back now, I think it's important to begin with the inarguable, and I think Judge Riley, you touched upon it. The plaintiffs are trying to combine for liability and discrimination purposes two completely different entities. My goodness. You have a charity that provides educational curriculum, materials, resources to teachers and students in schools in underdeveloped countries. Then you have Hugo, which is a normal for-profit business operating in the United States. The dichotomy between these two entities and the differences in their character, purpose, and operations could not be more stark. The legal structure of the separateness of the Foundation and Hugo are also inarguable. They're separate articles of incorporation, separate bylaws, separate tax returns, separate financial records. The Foundation is chartered under Iowa law. Hugo is incorporated under Nebraska law. Based on these facts and under this court's precedence, there is a, quote, strong presumption of separateness. And there also is, under this court's precedent, no, quote, extraordinary circumstances to override that dichotomy and merge them into one. The essence of joint employer integrated enterprise is about domination, where one entity breaks the demarcation between the two, so it's justified to treat them as one. You can't separate the two. You can't figure out who's who. That ain't the case here. A couple points, actually four points. One, Hugo does not decide, manage, or control the Foundation's operations. The Foundation does not decide, manage, or control Hugo's business operations. Two, the Foundation has its own employees and contractors. In fact, two of the three plaintiffs were contractors with personal contracts with the Foundation. They didn't perform Hugo work. The Foundation had its own chief operating officer, its own executive director, employees, and contractors. They did Foundation work exclusively. They didn't do any Hugo work. On the other side, Hugo had its own employees who did not perform the Foundation's charitable work. Three, the Foundation, and only the Foundation, decides the true indicia of employment. The Foundation decided compensation, decided benefits, decided who to hire, who to fire, who to discipline, where to schedule, who was sent. But those decisions were made in part by people who were managing in Hugo. Mr. Ricketts wasn't involved in those kinds of decisions? Mr. Ricketts was involved, but he was the head executive of the Foundation. And Levitt? No, Levitt was not involved in those decisions. Only Foundation. The Foundation only made those decisions. Mr. Ricketts was the head of the Foundation. He was the chief executive officer. Of course he's a decision maker. That he also happens to wear another hat at Hugo does not matter. The fourth point I wanted to make on domination was the Foundation's operational performance has no impact on Hugo. Hugo's operational performance has no impact on the Foundation. The essence of joint employer or integrated enterprise involves a mutuality of benefit between the two entities. That they're so linked, they're so joined together, that there's a domination. And again, you can't extract one from the other. That's not the case here. Well, I think you may be overstating it. I mean, OEF with its employees that it did have on the books couldn't have functioned by itself. No question. I don't dispute that, Your Honor. It couldn't function without Hugo employees. They needed administrative support on matters such as payroll processing or benefit claim processing. Hugo signed their checks. That's the one that strikes me, that jumps out to me, that any check from OEF was Hugo's. Hugo handled checks for OEF. Again, the handling of that ministerial task doesn't go to the four indicia. I don't know. I tell you, most people think the handling of the checks, having run a law firm, that's pretty important. Who signs the checks and who controls the checks? I couldn't agree more. But who decided what's on the checks? Who decides how much money somebody gets? That was only a Foundation decision. Solely a Foundation decision. Let me tell you my problem with Judge Smithgam's opinion is she finds all these facts in the background section, and then when she goes to do her analysis, she does very minimal relation back to those facts. It's a little more conclusory. Mr. Ricketts does admit that they have the common administrative infrastructure. In other words, Hugo handled the infrastructure for OEF. On that alone, why isn't that enough? I could go through, but you know the case better than I do, of all the sharing of work, I guess. So you tell me, did she really give an adequate analysis of the facts after she found them? Yes, based on those material facts that she found, which are undisputed, I think they clearly support the District Court's analysis and ultimate conclusions. I don't think the District Court found this to be a very hard case based on those undisputed facts. But going to your point about the administrative support, this court in Baker said that that's not really that important. Administrative support services does not make one an employer. That's just any third-party vendor providing non-essential services on unrelated matters to the core operations or the crux operations of the entity. Well, this gets back, and maybe you can tell me what the cases say. My original question is, do we have to find that the Hugo employees are OEF employees, or do we merely have to say these are two businesses that were so overlapped that they were integrated sufficiently that we consider all the employees? I don't think the court should consider all the employees. I think you need to look at the people who may have touched the foundation with respect to administrative support matters, and that's all they did. And you don't get to 15 even with that analysis. But again, the plaintiff's theory was lump everybody at Hugo with everybody at the foundation. That doesn't make any sense. Are there cases that do that? Never have piecemealed it that way, Your Honor. But if the point of integrated enterprise is to link the two entities, you need to identify who is really involved in the linkage. Again, Simmons and Leavitt. Well, no, I haven't looked at it thoroughly, but what I'm looking for, and I think what Judge Beam's asking too, is what do the cases say? I don't remember them saying what you just said, which is, well, you only count the ones that touch it. It seems that they're saying if they're integrated, you count them all. I think that's fair, Your Honor. But I don't think in any of those issues, excuse me, in any of those cases, the demarcation even between the other entity like in Hugo was ever argued. Here you're talking about Simmons and Leavitt, and what's critical, I think, is they had personal agreements with Mr. Ricketts. So their roles, they had different functions. Therefore, in this case, because of that feature, those two individuals, and that's all I'm hearing in terms of demonstrating integrated enterprise, they actually work for Mr. Ricketts. They may be assigned and also have roles at Hugo, but they're doing various things. You have to identify what things they were doing for which entities. So I think it's totally appropriate in this case because of the factual record. You count only Simmons and Leavitt, and you don't get to 15. But our case doesn't turn on that. Our whole case turns on you can't count Hugo at all. If you want to try to measure everybody, great, but it doesn't matter under the factual record in this case. This case is just like Artis, just like Brown. In fact, in Brown, Judge Riley, one of the big points was the parent. It was a parent-subsidiary relationship. We don't even have that here. But the parent was providing substantial administrative services. The court said, yeah, that's a factor. It seems like everything is a factor in these integrated enterprise cases. But the court said it ain't that big of a factor when you look at everything else. Was there a joint income tax return in that case? In other words, it was? Not in the Brown case. In fact, in that case, it was a parent-subsidiary, and I think there was a separateness maintained there. Even in this court, so Artis and Brown, in our view, are right on. Even if you look at Baker and Sandoval, the other two cases from the court, the factual records in those cases are so different than this case that they actually support the district court's finding. In both Baker and Sandoval, you had two businesses that were in for profit. Their work was related or identical. The financial performance of one flowed directly to the financial performance of the other. There was common ownership, common executives. So in those cases, the linkage, the domination was prevalent. Here, we don't have it. The foundation is making its own calls. The foundation is deciding what it's going to do with respect to all of the normal indicia of employment, wages, benefits, terms, and conditions of employment. If I can go with the four factors real quick, just so I can summarize our position, interrelation of operations, none. The administrative support stuff doesn't change anything. Common management, primarily Mr. Ricketts. Basically, so what? He's entitled to run multiple organizations. That doesn't mean when he's functioning in one capacity, he's always bringing in his other capacities. Three, centralized control of labor relations, none. All policies, all pay decisions, all benefit decisions, all disciplinary actions were decided by the foundation. Four, common ownership or financial control, none. The foundation actually has no owner, no shareholders, and Hugo does not financially control the foundation. I think my friend just admitted Mr. Ricketts funds it, not Hugo, and the foundation does not financially control Hugo. So we think for all those reasons, the district court got it right, and I think it's a bad message to send a corporate service through the form of administrative contribution, so to say. It's somehow going to result in legal liability. In my reigning time, I want to get to the tortious interference claim. This case is not about whether something was justified or unjustified. Under the Nebraska Supreme Court's decision in Huff, two elements. One, interference by a third party, third party to the employment relationship or the contract relationship. Second, and you only get to the second if you meet the first, that the interference was unjustified. And on that first element, the Huff court agreed with various other courts which had held to bring an unlawful interference claim against a co-employee. The plaintiff must show that the alleged interferer acted outside the scope of employment authority or that the interferer was pursuing some individual or private purpose. Nothing in the complaint even suggests that Mr. Ricketts was acting outside the scope of his employment authority, and nothing to suggest that he was acting for some private or personal interest. His actions were entirely for and on behalf of the foundation. Alleging that an employee acted with an unlawful motive but within the scope of that individual's authority to act is not third party interference. The plaintiff has a claim, potential claims against the entity because the agent, the interferer, is acting for the entity. Go after the entity. You don't go after the individual. And in Huff, they talked about a couple of policy reasons which are very applicable here. One, plaintiff's theory would eviscerate the at-will doctrine, a concern which the Huff court expressly used to shape its decision. Two, and this is an important one, expansion of the tort in such co-employee interferer cases would conflict with Nebraska's laws prescribing no personal liability for discrimination or retaliation. Now, I'm not arguing preemption or anything like that. I'm arguing a matter of how far do you take this tort. And under Huff, if you were to accept the plaintiff's argument, every discrimination case, every retaliation case, will now have appended to it a state law claim for tortious interference against the individual manager or managers. In Huff, the court realized that's a real problem, and therefore we have to impose some boundaries on the tort when it's involving actions by a co-employee. And that's what Huff's about, third-party interference where the interferer is a co-employee. And the Huff court and Nebraska Supreme Court impose some very significant boundaries on that that I just talked about. The plaintiff's complaint falls far outside of Huff. No Nebraska court has extended Huff like plaintiffs want to do. And actually, based on the holding and rationale of Huff, there was no legitimate reason why Mr. Ricketts was even named in this complaint or such a claim was brought against him. Like it's no joint employer or no integrated enterprise finding, we think the district court got the dismissal of the tortious interference claim exactly right, and it's squarely supported by Nebraska law. We ask for affirmance. Thank you. Does Mr. Merrick have some time? His time has expired, Your Honor. Pardon me? His time has expired. We'll give you one minute, Mr. Merrick. With respect to the issue whether HUGO individual employees ought to be counted, the defendant didn't make that argument below, and the district court didn't address it. As far as we know, there are no cases counting heads at the affiliated entity. The two entities are combined if the Baker factors are met. And that should be the case here because even if you start counting heads, for example, Mr. Levitt, Mr. Simmons, Ms. Kuhl, and others, all those people are supported by other employees at HUGO. They're not out there operating independently.  So you've got to consider all the employees, not count heads. Again, for Apple East to suggest that HUGO and opportunity education are totally unrelated just misses the mark. HUGO exists to support all the other enterprises. Mr. Ricketts admitted that opportunity education has no administrative infrastructure. These other entities don't either. That's what HUGO is there for. With respect to outside the scope of authority on the tort claim, it shouldn't be disputed that if a chief executive violates the company's EEO policies, which say we'll do a legitimate good faith investigation of your complaints and there'll be no reprisals, if instead the chief executive has a secret plan to get rid of the plaintiff for complaining, carries out that plan and retaliates, that's outside the scope of employment. That should be actionable for the tort. And the courts can consider each individual case with the elements of the tort. We don't have to decide whether or not Title VII preempts or displaces that process of action. Thank you. Thank you, Mr. Merrick. And thank you both for your arguments. And we will take that under advisement and be back in due course. Thank you.